**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NICHOLAS LISNICHY,** | : | |
| **Plaintiff** | : | |
| | : | **No. 3:12-cv-00940** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **MICHAEL J. ASTRUE,** | : | |
| **COMMISSIONER** | : | |
| **OF SOCIAL SECURITY** | : | |
| **Defendant** | : | |

**MEMORANDUM**

Before the Court is Plaintiff Nicholas Lisnichy's complaint, wherein he requests review

of the Social Security Commissioner's decision denying him disability insurance benefits. (Doc.

No. 1.) The motion has been briefed, and on May 22, 2014, the Court heard oral argument on

Plaintiff's complaint. (Doc. No. 19.) For the reasons that follow, the Court will affirm the

Commissioner's decision.

**I.      BACKGROUND**

On April 16, 2010, Plaintiff protectively filed a Title II application for a period of

disability and disability insurance benefits. The claimant also protectively filed a Title XVI

application for supplemental security income on April 16, 2010. (Doc. No. 9-3 at 9.) Both

applications were denied on September 20, 2010. Plaintiff then filed a written request for a

hearing, which was held before the Administrative Law Judge (ALJ) on August 2, 2011. (Doc.

No. 9-4 at 13, 29.) On October 11, 2011, the Administrative Law Judge determined that Plaintiff

was not disabled under sections 216 and 223(d) of the Social Security Act for a period of

disability and disability insurance benefits protectively filed on April 16, 2010; and, Plaintiff was

not disabled under section 1614(a)(3)(A) of the Social Security Act regarding his application for

supplemental security income. (Doc. No. 9-3 at 23.) On May 18, 2012, Plaintiff, proceeding <u>pro</u>

se, filed a complaint in this Court to appeal the Commissioner's decision.  (Doc. No. 1.)

## II.    STANDARD OF REVIEW

A trial court has plenary review of all legal issues decided by the Commissioner.  Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91 (3d Cir. 2007).  The trial court's review of any findings of fact, however, is limited to whether those findings are supported by "substantial evidence." Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Substantial evidence "does not mean a large or considerable amount of evidence," but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quotation omitted).  Substantial evidence exists only "in relationship to all the other evidence in the record," see Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981), and therefore a court reviewing the Commissioner's decision must scrutinize the record as a whole, including whether the Commissioner adequately developed the record. Shaw v. Chater, 21 F.3d 126, 131 (2d Cir. 2000).

To receive disability benefits, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medical determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(a).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied

for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process when evaluating disability insurance claims.  20 C.F.R. § 404.1520; Poulos, 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence, whether a claimant, first, is engaging in substantial gainful activity; second, has an impairment that is severe or a combination of impairments that is severe; third, has an impairment or combination of impairments that meets or equals the requirements of a listed impairment; fourth, has the residual functional capacity to return to his or her past work; and, if not, fifth, whether he or she can perform other work in the national or regional economy.  Id.  For the purposes of this determination, residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  See Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34475 (July 2, 1996).  The residual functional capacity assessment must include a discussion of the individual's abilities.  Id.; 20 C.F.R. § 404.1545; see Hartranft v. Apfel, 181 F.3d 358, 359 n.1 (noting that residual functional capacity is "defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

III.    DISCUSSION

At the first step of the sequential evaluation process, the Administrative Law Judge determined that Plaintiff had not engaged in substantial gainful activity since December 8, 2004, the alleged onset date.  (Doc. No. 9-3 at 11.)  At step two, the Administrative Law Judge found

that Plaintiff has the following severe impairments: degenerative disc disease, atrophy of the left

hand, dysthymic disorder, and opioid dependence.  (Id. at 11-12 (citing 20 CFR 404.1520(c) and

416.920(c)).)  At step three, the Administrative Law Judge determined that Plaintiff does not have

an impairment or combination of impairments that meet or medically equal the severity of one of

the listed impairments in 20 CFR Part 404.  (Id. at 12.)  At step four, the Administrative Law

Judge concluded that Plaintiff had the residual functional capacity to perform light work; and,

that Plaintiff could perform occasional posturals, but never climb ladders, ropes, or scaffolds;

Plaintiff could never push and pull with his non-dominant hand, but could do occasional

reaching, handling, and fingering with the non-dominant hand; Plaintiff could do "frequent"

reaching, handling, and fingering with the dominant hand; and, that Plaintiff could have "no

contact with hazards such as dangerous machinery and no contact with the public."  (Doc. No. 9-

3 at 14-15.)  The Administrative Law Judge further found that although Plaintiff had past

relevant work as a physician, he would not be able to perform all of the requirements of his past

work given the limitations of his residual functional capacity.  (Doc. No. 9-3 at 21.)  Finally, at

step five, the Administrative Law Judge determined that, on consideration of Plaintiff's age,

education, work experience, and residual functional capacity, there were jobs that exist in

significant numbers in the national economy that Plaintiff could perform.  (Id. at 22.)

Plaintiff objects to the Administrative Law Judge's finding on four grounds: (1) the jobs

cited by the Administrative Law Judge all require reaching, fingering, and handling to some

degree as well as operating a vehicle, and given the residual functional capacity assessment,

Plaintiff is not capable of performing any jobs cited by the vocational expert; (2) the residual

functional assessment does not contain a "quantitative function-by-function assessment," and the

terms "frequent" and "limited" are not defined in vocational terms; (3) the finding that Plaintiff

can successfully adjust to other jobs that exist in the national economy is not supported by

substantial evidence because the vocational expert's testimony is based upon a fatally flawed

hypothetical question and cannot support a finding of "not disabled;" and, (4) the Administrative

Law Judge should not have discounted Plaintiff's credibility based on his prior criminal

conviction.  (Doc. No. 10 at 3.)  The Court will take each objection in turn.

   With respect to Plaintiff's first argument – that the Administrative Law Judge erred

because there are "unaddressed inconsistencies" between the Dictionary of Occupational Titles

and the vocational expert's testimony regarding Plaintiff's ability to reach, finger, and handle –

the Court finds this argument is without merit.  The Administrative Law Judge determined that

Plaintiff had the residual functional capacity to perform light work as follows: "The claimant can

do occasional posturals except never climb ladders, ropes, scaffolds.  The claimant can never

push and pull with his non-dominant hand.  The claimant can do occasional reaching, handling,

and fingering with the non-dominant hand.  The claimant can do frequent reaching, handling,

and fingering with the dominant hand.  The claimant can have no contact with hazards such as

dangerous machinery and no contact with the public."  (Doc. No. 9-3 at 15.)  The vocational

expert explicitly testified that the three positions she identified in the national and regional

economy that corresponded to Plaintiff's residual functional assessment "never [require]

reaching, handling, fingering with the non-dominant hand," and cited her own personal

observation of those jobs in support, along with the Dictionary of Occupational Titles.  (Doc.

No. 9-2 at 31-33.)  To the extent that Plaintiff asserts that the jobs cited by the expert require

"operating a vehicle," the Court assumes Plaintiff is referring to commuting, as the jobs

identified by the expert do not require operation of a vehicle.  The Court rejects this objection, because Plaintiff's commuting issues are not a vocational consideration.  See 20 C.F.R. §§ 404.1566, 416.966.  Accordingly, the Court finds the Administrative Law Judge did not err by failing to consider "unaddressed inconsistencies" exist between the Dictionary of Occupational Titles and the jobs cited by the vocational expert.

Plaintiff's second argument is that the Administrative Law Judge's decision does not define "frequent" and "limited" in vocational terms, and thus the vocational expert could not properly utilize the residual functional assessment when conducting her analysis.  (Doc. No. 10 at 2.)  First, the Administrative Law Judge's residual functional assessment does not use the word "limited."  (Doc. No. 9-3 at 14.)  Second, the word "frequent" has a specific definition for social security vocational purposes, see SSA, 1983-1991 Soc. Sec. Rep. Serv. 24 (1983).  Any vocational expert engaged by the Agency is familiar with this definition.  The Court therefore rejects Plaintiff's argument that the Administrative Law Judge erred on this basis.

Plaintiff next submits that the Administrative Law Judge's finding that he could successfully adjust to other jobs that exist in the national economy is not supported by substantial evidence because the hypothetical question posed by the Administrative Law Judge did not contain the essential elements of his residual functional assessment.  (Doc. No. 10 at 2.)  Specifically, Plaintiff asserts that the hypothetical posed to the vocational expert did not contain an alternative sit-stand option, and thus the expert's testimony is "fatally-flawed."  (Id.)  Although Plaintiff is correct that the Administrative Law Judge did not pose the hypothetical to the vocational expert with a "sitting/standing" alternative, the Court finds that substantial evidence supports the Administrative Law Judge's determination.

First, Plaintiff asserts that the "sit-stand option" was part of his residual functional assessment, and reflects that he is capable of light work with a sit-stand option of six hours. Reviewing the transcript and decision, however, the Court observes that the Administrative Law Judge did <u>not</u> include a sit/stand option in his hypothetical because it was not part of his residual functional assessment for Plaintiff: "The claimant can do occasional posturals except never climb ladders, ropes, scaffolds. The claimant can never push and pull with his non-dominant hand. The claimant can do occasional reaching, handling, and fingering with the non-dominant hand. The claimant can do frequent reaching, handling, and fingering with the dominant hand. The claimant can have no contact with hazards such as dangerous machinery and no contact with the public." (Doc. No. 9-3 at 15.)

The only evidence in the record that might support Plaintiff's assertion that the "sit/stand option" should have been included in his residual functional assessment is a letter that Plaintiff submitted after his hearing before the Administrative Law Judge. On September 19, 2013, Plaintiff filed a letter from his treating physician, Dr. Baroody, in which she attested that his cervical spinal stenosis makes it "very difficult for him to sit, stand, and/or ambulate for prolonged periods of time," as well as a letter from his former physician, Dr. Holla, which indicated the same. (Doc. No. 13.) This would seem to support Plaintiff's claim that his residual functional assessment should have included an alternative sit/stand option. Yet, when questioned at the Court's hearing on May 22, 2014, Plaintiff did not claim this letter marked a change in his condition:

> The Court:     Okay. And is there anything about the representations in these
>                documents that reflects a change in your conditions or –
>
> Plaintiff:     I would say, they, perhaps, bolster my opinion that my disability

<table>
<tr><td></td><td>does exist. I don't exactly remember the wording of the individual documents, the individual letters, but I believe they talked about my disability in general. So I think it just spoke basically on my disability that was continuing at that point.</td></tr>
<tr><td>The Court:</td><td>Okay. I'm going to ask the clerk to pass the letters to you and let you have a look just in case there's anything that I need to note concerning those letters.</td></tr>
<tr><td>Plaintiff:</td><td>Yes, this reflects my condition. I have nothing to add.</td></tr>
</table>

(May 22, 2014 Transcript at 4:17-25, 5:1-6.)

With respect to these letters, the Court observes that Plaintiff did not assert at his hearing that such letters constituted "new" evidence. "[W]hen the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ." Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001). Plaintiff does not assert such evidence was either new or material, and the Court will not order remand on this basis. Because the Court is limited to "the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence," see Matthews, 239 F.3d at 593 (citation and quotation marks omitted), the Court need not consider this letter when deciding whether the Administrative Law Judge's decision was supported by substantial evidence.

The Court finds that the Administrative Law Judge's formulation of the residual functional assessment without a "sit/stand option" is supported by substantial evidence. The Court observes that Plaintiff's treating physician, Dr. Holla, indicated in June 2010 in a "Physical Residual Functional Capacity Questionnaire" that Plaintiff could "sit and stand/walk for at least six hours;" would not need a job that "permits shifting position at will from sitting, standing, or walking," nor a job that "need[s] to include periods of walking around during an 8

hour working day," and this letter was filed in the record before the Administrative Law Judge. (Doc. No. 9-9 at 20.)  This supports the Administrative Law Judge's omission of a "sit/stand option" in his residual functional assessment because Plaintiff's own physician did not advise that such an option was necessary.  Accordingly, the Court finds that Plaintiff's objection is without merit, and the Administrative Law Judge's finding that Plaintiff could adjust to certain jobs in the national or regional economy is supported by substantial evidence.

Plaintiff's final argument in support of remand is that the Administrative Law Judge erred in questioning his credibility on the grounds of his previous criminal conviction.  (Doc. No. 10 at 2.)  Plaintiff does not cite any legal support for his position, and the case law is to the contrary.  See Smith v. Astrue, 851 F. Supp. 2d 305, 310 (D. Mass. 2012) (finding that an Administrative Law Judge may properly inquire into past criminal conduct when making a credibility determination).  Although Plaintiff is correct that the Administrative Law Judge cited the fact that he used his medical license for criminal gain as undermining his credibility, see Doc. No. 9-3 at 20, this was not the sole factor upon which the Administrative Law Judge relied. In fact, he also cited his personal observation of Plaintiff during the hearing, stating that "[t]he fact that the claimant did not exhibit any symptoms during the hearing undermines his credibility."  (Id.)  Because nothing in the record or hearing transcript indicates that the Administrative Law Judge discounted Plaintiff's testimony solely because of his criminal history, see Smith, 851 F. Supp. 2d at 310, the Court rejects Plaintiff's argument that the Administrative Law Judge erred in considering his criminal conviction when determining credibility.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that there is substantial evidence to affirm the decision of the Commissioner of the Social Security Administration upholding the decision of the Administrative Law Judge denying disability insurance benefits to Plaintiff.  The Court will affirm the decision of the Commissioner.  An order consistent with this memorandum follows.